

**SO ORDERED.**

**SIGNED this 08th day of May, 2010.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court
### Western District of Texas
### San Antonio Division

| | |
|---|---|
| In re | Bankr. Case No. |
| South Texas Oil Co., et al. | 09-54233-C |
| *Debtors* | Chapter 11 (Jointly Administered) |
| Baker Hughes Oilfield Operations, Inc. and Schlumberger Technology Corp. | |
| *Plaintiffs* | |
| v. | Adv. No. 10-5012-C |
| Summerline Asset Management, LLC; Lonview Marquis Master Fund, LP; Summerview Marquis Fund, LP; and STO Operating Co. | |
| *Defendants* | |

**Decision and Order on Motions to Dismiss Complaint**

Defendants have filed motions to dismiss the plaintiffs' complaint for declaratory relief under Rule 12(b)(6), saying that the complaint fails to state a claim for which relief

can be granted. Plaintiffs respond that the motions are not well taken either procedurally or substantively.

The complaint arises from a failed oil and gas exploration project, generally referred to here as the Matagorda Bay project. The plaintiffs are mineral subcontractors who did work on the leases on behalf of the operator, STO Operating Company, one of the debtors in this case. The operator was acting at the behest of the various working interest owners of the mineral estate, pursuant to a joint operating agreement. The work on the prospect was abandoned eventually, and no producing wells were brought in. The subcontractors and suppliers remain unpaid for their services. According to the complaint, the working interest owners owe approximately $1,053,355.66 to STO Operating for operations conducted on the Matagorda Bay Prospect. It is not known at this stage of the proceedings whether all or even any of these JIB's (Joint Interest Billings) have been collected from the working interest owners by the operator.

While the analogy is not perfect, there are significant similarities in this structure to the building construction industry, where a general contractor agrees to build a structure on behalf of the owner of the property, and retains subcontractors and suppliers to actually perform the work. Texas law affords a lien to subcontractors and suppliers in the oil and gas exploration business, just as it does in the building trade. *See* Tex. Prop. Code, ch. 56; *see also id.*, ch. 53. Chapter 56 permits the mineral subcontractors to file a lien affidavit for their unpaid services and supplies, and the lien attaches to the mineral estate as well as to the equipment on the lease. *See* Tex. Prop. Code, § 56.0__. In addition, however, there is a trapping provision. Trapping provisions are designed to prevent an owner from paying a contractor monies so long as the

2

subcontractor or supplier remains unpaid. In the building trade, the owner who receives a trapping notice from a subcontractor or supplier is not allowed to pay the contractor any money until the subcontractor or supplier is paid. If the owner pays the contractor anyway, then the owner becomes directly liable to the owner for entire amount of the claim. *See* Tex. Prop. Code, § 53.083.

The mineral contractor chapter of the Texas Property Code also has a trapping statute. If an unpaid mineral subcontractor or supplier who has filed a lien notice then also sends notice to working interest owners, the statute has a similar effect, "trapping" monies otherwise due and owing to the operator, so that they are to be paid directly to the mineral lien claimants instead. Like the similar provision for building subcontractors, the trapping statute is only available to those who have or are eligible to have a lien on the owner's property, but it does not expressly create a lien as such on the monies that are intended to be trapped.

At issue in this complaint is whether this trapping statute gives mineral lien claimants a claim on the monies owed by working interest owners to the operator, superior to the claim of a third party lender with a lien on the assets of an operator. The motion to dismiss is filed by the third party lender, and claims that the plaintiffs have no basis for their assertions as a matter of law, such that the complaint should be dismissed under Rule 12(b)(6).

The defendants first contend that plaintiffs failed to allege any facts sufficient to challenge the validity of the defendants' liens, relying on recent Supreme Court cases, especially *Atlantic Bell Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs reply that this is an action for declaratory relief pursuant to the Federal Declaratory Judgment Act,

3

28 U.S.C. § 2201. In such an action, say the plaintiffs, there is no need to plead a specific act or omission by the defendants to maintain the cause of action.

The plaintiffs are right. The point of the Supreme Court's directive in *Twombly* was to weed out frivolous litigation where insufficient facts are alleged to form the basis for a claim. Here, the facts alleged are simple: my lien position is better than your lien position. If there is a failure of pleading here (and it doesn't appear that there is), it is easily cured by a directive that the movant plead with greater particularity. For example, the plaintiffs might plead that defendants' liens are not properly perfected in the county where the work was performed (a factual allegation) in support of its contention that, without such a perfection, its claims are subordinate to the claims of the plaintiffs in the JIB's. Still, *Twombly* should not be read to raise the pleading requirement to that of a summary judgment. This ground for dismissal is overruled.

The defendants next allege that the Texas Mineral Lien statute does not grant the plaintiffs a lien on JIB's. The defendants respond that they *do* have a claim on JIB's, and cite to *FDIC v. Mid-America Petroleum, Inc.*, 83 B.R. 933 (Bankr. N.D.Tex. 1988). The defendants' argument ignores the trapping statute entirely, focusing only on the reach of the lien conferred by the statute. The defendants are right of course in asserting that the lien statute does not confer a *lien* as such on JIB's (or monies otherwise owed as JIB's, and not yet paid by the working interest owners). But the argument misses the point made by the court in *Mid-America Petroleum* -- the trapping statute has the effect of preventing the operator from collecting monies from the working interest owners, so that a lien creditor of the operator trying to attach those same funds is *de facto* subordinated to the lienholder who has given notice pursuant to the trapping statute. The question

4

posed by the complaint is whether that trapping effect primes any claim that the defendants might make to redirect payments on those JIB's from the operator to the defendants. The only argument made by the defendants on this point, however, is one that is irrelevant. A mineral subcontractor or supplier must have a lien (or at least have the right to have a lien) in order to avail itself of the trapping statute. It makes no legal difference in this dispute that the lien itself does not attach to JIB's. What is relevant is whether the *trapping statute* has the effect of defeating any competing lien of a lender of the operator. The defendants simply do not address that question in their pleadings.[1] For that reason, the second ground for dismissal is also not well taken, and is overruled.

In their third ground for dismissal, the defendants contend that their liens were perfected prior in time to the commencement of the delivery of goods or services to the project, and thus have priority over the plaintiffs' rights (whatever they might be) in the JIB's. This contention, however, is of the sort that might be made at the summary judgment stage, and requires evidence. No summary judgment evidence is attached to this motion, nor has the court ruled that the motion should be treated as one for summary judgment. The defendants' statement that their liens were perfected prior in time is not supported in these papers. Nor can the defendants shift the burden of proof

---

[1] The closest defendants come to grappling with the issue is their discussion of the *Mid-American* decision. They point out that the court there found that the FDIC's lien could not attach to JIB's because such JIB's could not even arise until the operator had actually paid the subcontractors and suppliers. *See* Motion, at p. 5. Instead of going further to argue whether a similar analysis might apply in this case, the defendants simply say "the *Mid-American* court did not hold that the mineral lien attached to a JIB as no JIB had been created under the terms of the operating agreement. Again, the issue of what type of property a mineral lien attaches to under chapter 56 was not relevant to the case." The last sentence is certainly correct -- but it also highlights that the defendants do not understand the issue before the court. It is not relevant that the mineral lien does not attach to the JIB's, because the plaintiffs' right of recovery does not hinge on that allegation. Instead, the plaintiffs claim that the *trapping statute* affords them certain rights that have the effect of trumping any claim by the defendants. That issue, unfortunately, is not addressed in the defendants' papers.

to the plaintiffs by pointing out that the plaintiffs have failed to plead that the defendants' liens were not perfected. This is a declaratory judgment action after all.

Even if the defendants were right as a matter of pleading (and the court does not believe, as do the defendants, that the plaintiffs, to proceed at this stage, must plead away the defendants' lien position), their argument still fails to adequately address the essential question whether a prior perfected lien does or does not trump the effects of a validly triggered trapping statute. This ground for dismissal is thus overruled.

The court is as yet undecided on the legal question presented by this complaint, and awaits more helpful briefing from the parties at the summary judgment stage, when the factual parameters of this dispute can be presented as well.

In the meantime, the court directs the defendants to file an answer to this complaint within 21 days of the date of entry of this order. The motion to dismiss is in all things denied.

# # #