**SO ORDERED.**

**SIGNED this 11th day of August, 2010.**

_____
**LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SOUTH TEXAS OIL COMPANY, | ) | Case No. 09-54233-LMC |
| ET. AL., | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| BAKER HUGHES OILFIELD | ) | |
| OPERATIONS, INC., and | ) | |
| SCHLUMBERGER TECHNOLOGY | ) | |
| CORPORATION, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Adversary No. 10-05012 |
| | ) | |
| SUMMERLINE ASSET MANAGEMENT, | ) | |
| LLC; LONGVIEW MARQUIS MASTER | ) | |
| FUND, L.P.; SUMMERVIEW MARQUIS | ) | |
| FUND, L.P.; AND STO OPERATIONS | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants | ) | |

**DECISION AND ORDER GRANTING OBJECTIONS TO (1) TNT CRANE &
RIGGING, INC.'S MOTION TO INTERVENE AND (2) SMITH INTERNATIONAL,
INC. & WOOD GROUP LOGGING SERVICES, INC.'S JOINT MOTION TO
INTERVENE**

Came on for consideration the foregoing matters. Smith International, Inc. and Wood Group Logging Services, Inc. seek to intervene in this adversary proceeding. The defendants in this action filed an objection to that intervention. The adversary proceeding was filed by Baker Hughes Oilfield Operations, Inc. and Schlumberger Technology Corporation, seeking declaratory relief with regard the status of certain claimed rights under the Texas Property Code relative to the lien claims of the defendants, with respect to certain funds and certain rights of recovery in the hands of the debtors. The intervenors claim to be similarly situated and hope to be the beneficiaries of any ruling favorable to the plaintiffs. A similar motion was filed by another oil service provider, TNT Crane & Rigging, Inc. The court inadvertently entered an order granting that motion before the defendants had a fair opportunity to respond. The court grants reconsideration of that motion, placing TNT's motion for intervention once again before the court for consideration as well. For the reasons stated herein, the court denies the motions to intervene.

On October 29, 2009, South Texas Oil Company and a number of related entities (collectively, the "Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On November 13, 2009, the court signed a second interim order allowing the Debtors to use cash collateral (the "Cash Collateral Order") [Docket No. 61].[1] On December 4, 2009, the court signed a final order granting the Debtors' motion for entry into debtor-in-possession financing (the "DIP Order") [Docket No. 113]. The language of the Cash Collateral Order provides:

> Any party-in-interest (other than the Debtors) or any Committee with the requisite standing to do so, shall be permitted the later of 60 days from the date of the order approving the appointment of counsel for the Committee or 75 days (or a longer period for cause shown before the expiration of such period) from the entry of the Final Order (the "Investigation Period"), to (a) investigate (subject to the

---

[1] A final cash collateral order was never entered in this case.

2

> limitations set forth in the Budget and in an amount not to exceed $10,000) and challenge, only by filing an adversary proceeding or motion as appropriate, the validity, enforceability, priority, perfection, or amount of the Prepetition Indebtedness, the Agent's security interests in and liens on the Prepetition Collateral in respect thereof; or (b) assert, only by filing an adversary proceeding or motion as appropriate, any claims or causes of action of the Debtors and their respective estates against the Agent or the Prepetition Lenders. The foregoing provision of this paragraph 13 is without prejudice to the ability of any party to request a different investigation period and a different investigation budget. If no such adversary proceeding is filed during the Investigation Period: (i) the Prepetition Indebtedness shall constitute allowed claims (without the necessity of filing proofs of claim) against the Debtors and shall not be subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of re-characterization, claim of avoidance of any nature, attack or challenge under the Bankruptcy Code, other applicable nonbankruptcy law, or otherwise; (ii) the Prepetition Liens on the Prepetition Collateral shall be deemed legal, valid, binding, enforceable, duly perfected, not subject to defense, counterclaim, offset of any kind, or subordination, and such liens are otherwise unavoidable; and (iii) the Agent, the Prepetition Lenders, the Prepetition Indebtedness, the Prepetition Loan Documents, and the Prepetition Liens shall not be subject to any other or further claims, counterclaims, causes of action, lawsuits, or challenges by any party-in-interest or any successor thereto.

*Cash Collateral Order*, ¶ 13 at 16-17.  Additionally, the DIP Order contains a similar provision, which states:

> (g) Any party-in-interest (other than the Debtors) or any Committee with the requisite standing to do so, shall be permitted until January 29, 2010 (the "Investigation Period"), to (a) investigate and challenge, only by filing an adversary proceeding or motion as appropriate, the validity, enforceability, priority, perfection, or amount of the Prepetition Indebtedness, the Prepetition Lender's security interests in and liens on the Prepetition Collateral in respect thereof; or (b) assert, only by filing an adversary proceeding or motion as appropriate, any claims or causes of action of the Debtors and their respective estates against the Prepetition Lender. If no such motion, objection or adversary proceeding is filed during the Investigation Period: (i) the Prepetition Indebtedness shall constitute allowed claims; provided that Prepetition Lender files a proof of claim on or before December 15, 2009, the amount of which shall be deemed to be the Prepetition Indebtedness for the purposes of this paragraph; (ii) the Prepetition Liens on the Prepetition Collateral shall be deemed legal, valid, binding, enforceable, duly-perfected, not subject to defense, counterclaim, offset of any kind, or subordination, and such liens are otherwise unavoidable; and (iii) the Agent, the Prepetition Lenders, the Prepetition Indebtedness, the Prepetition Loan Documents, and the Prepetition Liens (all as defined in the Cash Collateral Order) shall not be subject to any other or further claims, counterclaims, causes of action, lawsuits, or challenges by any party-in-interest or any successor thereto.

*DIP Order*, ¶ 17(g) at 17-18. Notably, the DIP Order also contains the following language:

> 18. **Subject M&M Lien Creditors; Ad Valorem Tax Creditors.**
>
> (a) Baker Hughes Oilfield Operations, Inc.; Schlumberger Technology Corporation; Brown Water Marine Service, Inc.; Raymond Duqat Co., LC, Hercules Drilling Company, LLC, and FESCO, Ltd. (the "Subject M&M Lien Creditors") assert that as of the Petition Date, the Subject M&M Creditors are the holders of perfected mineral liens and mineral subcontractor liens under Chapter 56 of the Texas Property Code (the "Asserted M&M Liens") on the State Tract 127 and 150 Leases that are (or were) owned by the Debtors and the associated oil and gas wells, property and equipment located in Matagorda Bay, Calhoun County, Texas (the "Matagorda Bay Leases"). The Subject M&M Lien Creditors further assert that they have a first-priority lien on all unpaid joint interest billings owed to Debtors, as operator, for operations conducted on the properties for which the Subject M&M Lien Creditors furnished materials and services, more specifically described in the Joint Objection [Docket No. 63] filed by certain of the Subject M&M Lien Creditors. Notwithstanding anything herein, the Court makes no finding regarding the validity or priority of any liens or security interests being asserted against any unpaid joint billings or amounts paid to the Debtors as operator under the applicable agreements with non-operating working interest owners, and whatever rights the Subject M&M Creditors may have with respect to the Asserted M&M Liens against the Matagorda Bay Leases and/or the related joint interest billings are fully preserved.

*DIP Order*, ¶ 18 at 18 (emphasis original). It is uncontested that the Prepetition Lender (as defined in the DIP Order) complied with paragraph 17(g) and filed a proof of claim by December 15, 2009. Ultimately, on or around March 31, 2010, after a sale of the majority of the Debtors' assets, the case was converted to one under chapter 7 of the Bankruptcy Code [Docket No. 215].

On January 29, 2010, the above-captioned plaintiffs (the "Plaintiffs") commenced this adversary proceeding (the "AP") against the above-captioned defendants (the "Defendants"). The Plaintiffs seek, *inter alia,* a declaration that Summerline Asset Management, LLC's liens are invalid and that the Plaintiffs have a first-priority lien on certain joint-interest billings owed to STO Operating Company. Summerline Asset Management, LLC is the agent (the "Agent") for Longview Marquis Master Fund, L.P. ("Longview") and Summerview Marquis Fund, L.P. ("Summerview"). On April 30, 2010, TNT Crane & Rigging, Inc. filed its motion to intervene in

the AP (the "TNT Motion") [Docket No. 16]. The court granted the TNT Motion on May 10, 2010 (the "TNT Order") [Docket No. 20]. On May 14, 2010, the Agent filed a motion – on behalf of Longview and Summerview – asking that the court reconsider the TNT Order (the "Motion to Reconsider") [Docket No. 24]. On May 24, 2010, TNT filed a response to the Motion to Reconsider [Docket No. 27] (the "TNT Response"), and on June 3, 2010, the Agent filed a reply to TNT's response (the "Reply") [Docket No. 30]. Additionally, on June 2, 2010, Smith International, Inc. and Wood Group Logging Services, Inc. (collectively, "Smith & Wood," and, together with TNT, the "Movants") filed a joint motion to intervene in the AP (the "S&W Motion," and, together with the TNT Motion, the "Motions to Intervene") [Docket No. 29]. On June 16, 2010, the Agent – again on behalf of Longview and Summerview – filed an objection to the S&W Motion (the "S&W Objection," and, together with the Motion to Reconsider, the "Objections") [Docket No. 31].

As alluded to above, the court erroneously entered the TNT Order before fourteen (14) days had passed since the filing of the TNT Motion. The Local Bankruptcy Rules provide the Agent with 14 days to respond to non-dispositive motions in an adversary proceeding. For this reason, the Motion to Reconsider is granted, and the court will consider the merits of the Agent's objection to the TNT Motion. Moreover, because both Motions to Intervene ask for the same relief, and the Agent's Objections are substantially similar, the court will rule on both Motions to Intervene in this decision and order. For the reasons that follow, the Motions to Intervene are denied.

5

**A. The Pleadings**

Both Motions to Intervene seek relief pursuant to Federal Rule of Civil Procedure 24, incorporated herein through Federal Rule of Bankruptcy Procedure 7024. In its pleading, TNT asks that it be allowed to intervene "because its claim shares common questions of law or fact with the claims asserted by Plaintiffs. Fed. R. Civ. P. 24(b)(2). As a mechanic's lien claimant, Intervenor (a) is asserting the same arguments as Plaintiffs in this proceeding; and, (b) is entitled to share prorate in any proceeds which are recoverable by Plaintiffs." *TNT Mot.*, at ¶ 5. Furthermore, TNT asserts that if the court grants its request, it will "not result in undue delay because this adversary proceeding has not been on the Court's docket for an extended period of time, and the Court has not yet entered a scheduling order." *Id.* at ¶ 6. Finally, TNT states that allowing it to intervene "will not prejudice the parties because the claims of Intervenor are identical to the claims of Plaintiffs." *Id.* at ¶ 7. In its response to the Motion to Reconsider, TNT asserts that it is not violating the DIP Order deadline because the AP was already <u>filed</u> by the Plaintiffs. *TNT Response*, at 2. "The federal courts have consistently held that a lawsuit commences with the filing of the original complaint. … an intervening plaintiff asserting identical causes of action against the same defendants as named in the original complaint does not change the commencement date." *Id.* In this case, TNT asserts did not <u>file</u> a complaint against the Defendants, it is merely seeking to intervene in a case that was timely filed under the deadline set out in the DIP Order. *Id.* at 2-3. TNT bases its final (and presumably alternate) argument on equity: "TNT was originally of the impression that its interests were adequately protected by the filing of this adversary by Plaintiffs. Because of language in various orders and pleadings in this matter, in the abundance of caution TNT seeks to intervene so that its interests

are protected." *Id.* at 3.  Consequently, TNT asks that you grant its request to intervene in this AP.

In the S&W Motion, Smith & Wood make similar arguments as TNT's. Smith & Wood both

> assert a first priority lien on the attached mineral leases and leasehold interests of Debtor. … [they also] contest provisions in the DIP Order which relate to the alleged prepetition security interests granted by the Debtors to the Prepetition Lenders. … the DIP Order cannot grant rights to the Prepetition Lenders that did not exist previously.

*S&W Mot.*, at ¶¶ 13-15.  As does TNT, Smith & Wood argue that the DIP Order does not bar their intervention because the Plaintiffs filed the AP within the deadline of the DIP Order. *Id.*, at ¶ 16.  "It follows that the filing by Baker Hughes and Schlumberger met and thus stayed the 'Investigation Period' outlined within the DIP Order.  Thus, Intervenors seek leave to intervene in the Adversary Complaint as the investigation period was met and the Intervenors claims are identical to those of [the Plaintiffs]." *Id.*, at ¶ 17.  Lastly, Smith & Wood argue that they should not be prevented from challenging the Defendants' liens for three reasons: (i) the "DIP Order does not create, and was not intended to create or acknowledge, prepetition liens on specific oil and gas properties where such liens did not previously exist…[;]" (ii) Smith & Wood are "entitled to rely upon the representations and evidence provided to the Court that the Debtors had reviewed the lien position of Prepetition Lenders and that Prepetition Lenders had perfected first priority security interests in all of the Debtors' oil and gas properties…[;]" and (iii) granting the S&W Motion "will not result in any undue delay or prejudice since this proceeding has only been on the Court's docket a short period of time and as Petitioner's claims are identical to those of [the Plaintiffs] (and TNT)." *Id.*, ¶¶ 18-20. For all these reasons, Smith & Wood ask that you allow them to intervene in the AP.

The Agent's arguments in opposition to both Motions to Intervene are substantially similar. The thrust of the Agent's argument is that the Motions to Intervene are untimely. More specifically, because both TNT and Smith & Woods failed to meet the deadline set in the DIP Order, they may no longer intervene in the AP, regardless of the fact that the Plaintiffs timely filed a complaint. *Mot. to Reconsider*, at 3; *S&W Objection*, at 2. The Agent notes that "TNT was included on the Debtors' service list and had notice of the deadline. … [The Plaintiffs] timely commenced the above-captioned adversary proceeding on January 29, 2010. TNT did not file a complaint within the period proscribed, and its motion to intervene is therefore untimely." *Mot. to Reconsider*, at 3. The Agent also notes that the S&W Motion was filed "approximately four months after this limitations period [the January 29, 2010 deadline] had passed and is therefore not timely pursuant to Rule 24 of the Federal Rules of Civil Procedure." *S&W Obj.*, at 2. The Agent addresses Rule 24 thusly:

> Rule 24(b) of the Federal Rules of Civil Procedure, as incorporated by Rule 7024 of the Federal Rules of Bankruptcy Procedure, permits intervention on a timely motion. If the request to intervene is untimely, then it must be denied. A corollary to the rule is that a request to intervene should be denied if the intervenor seeks to assert claims that are time-barred. Rule 24 should not be used to permit a party to circumvent an established deadline simply by joining in a timely filed adversary proceeding.

*Mot. to Reconsider*, at 3-4; *S&W Obj.*, at 2-3.

The Agent contends that "the Fifth Circuit has adopted the rule that 'the filing of the motion for intervention … determines the commencement of the action for purposes of the statute of limitations.'" *S&W Obj.*, at 3 (citing *United States v. Randall & Blake*, 817 F.2d 1188, 1192 (5th Cir. 1987)); *Reply*, at 3 (citing the same Fifth Circuit authority). Other courts (and, in particular, the authority cited by TNT for support of its position on this issue) have said that in jurisdictions that have the Fifth Circuit's rule "'an intervening plaintiff should not be permitted to 'piggyback' on the claims of an earlier plaintiff in order to escape the statutory bar that would

8

normally shield the defendant from liability as to the intervenor.'" *Id.*; *Reply*, at 3 (citation omitted). Additionally, Smith & Wood's stated bases for intervention – that the DIP Order deadline was met and that its claims are identical to the Plaintiffs' – do not justify intervention under Rule 24. *Id.* at 4. In its reply, the Agent also distinguishes the case cited by TNT – *Webber v. Mobile Oil Corp.*, 506 F.3d 1311 (10th Cir. 2007) – in support of its argument that it is merely trying to intervene in an already commenced AP. *Reply*, at 2-3. For these reasons, the Agent contends that neither TNT nor Smith & Wood should be allowed to circumvent the January 29, 2010 deadline set in the DIP Order by intervening in the AP that was timely filed by the Plaintiffs.

**B. Analysis**

Federal Rule of Civil Procedure 24, incorporated herein by Federal Rule of Bankruptcy Procedure 7024, provides in relevant part:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
> (1) is given an unconditional right to intervene by a federal statute; or
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
> (b) Permissive Intervention.
> (1) In General. On timely motion, the court may permit anyone to intervene who:
> (A) is given a conditional right to intervene by a federal statute; or
> (B) has a claim or defense that shares with the main action a common question of law or fact.
> …
> (3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.
> (c) Notice and Pleading Required. A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

The Fifth Circuit has held that § 1109 of the Bankruptcy Code does not constitute an "unconditional right to intervene by a federal statute." *The Official Creditors Comm. of Fuel Oil Supply and Terminaling v. Gulf Oil Corp. (In re Fuel Oil Supply and Terminaling)*, 762 F.2d 1283 (5th Cir. Tex. 1985) (ruling that the debtor's official creditors' committee did not have an absolute right to intervene in an adversary proceeding under Rule 24(a)(1) and § 1109(b) of the Bankruptcy Code). Thus, even if the Movants had relied on Rule 24(a)(1), relief under that subsection would not be available. Likewise, the Movants did not assert the right to intervene under Rule 24(a)(2), either. Instead, TNT requested relief under Rule 24(b)(2), *TNT Motion*, at ¶ 5, and Smith & Wood failed to invoke any particular section of Rule 24 at all in their papers. Consequently, the court will only analyze whether the Movants may intervene in the AP under Rule 24(b).

A motion to intervene under Rule 24(b) must be timely. *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 1999 U.S. Dist. LEXIS 231 (N.D. Tex. 1999); *Stallworth v. Monsanto Co.*, 558 F.2d 257, 253 (5th Cir. 1977).

> Timeliness of intervention depends on a review of all the circumstances, and the Fifth Circuit has identified four factors to consider: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) prejudice to the existing parties resulting from the intervenor's failure to apply for intervention sooner; (3) prejudice to the intervenor if his application for intervention is denied; and (4) the existence of unusual circumstances.

*Trans Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 822 (5th Cir. Tex. 2003) (citing *Stallworth*, 558 F.2d at 264-66). In *Stallworth*, the Fifth Circuit elaborated that

> 'Timeliness,' … 'is not a word of exactitude or of precisely measurable dimensions.' Rule 24 fails to define it, and the Advisory Committee Note furnishes no clarification. As a result, the question whether an application for intervention is timely is largely committed to the discretion of the district court, and its determination will not be overturned on appeal unless an abuse of discretion is shown. We have said that timeliness is not limited to chronological considerations but 'is to be determined from all the circumstances.'

558 F.2d at 263. The Fifth Circuit has reiterated that "[t]hese factors are 'not a formula for determining timeliness'; instead, it should be determined based on all the circumstances." *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 561 (5th Cir. 2003). In this case, the question of whether the Motions to Intervene are timely under the standards set out in the foregoing authorities is necessarily intertwined with a consideration of the DIP Order entered in this court.[2]

The first factor – the length of time the intervenor knew or should have known of its interest in the case – cuts against the Movants' position. Notably, "[a]ctual knowledge is not required." *Stallworth*, 558 F.2d at 264. The Debtors filed their bankruptcy cases on October 29, 2009. In their motion, Smith & Wood note that they served notice of their alleged liens on the appropriate parties on July 14, 2009, well before the bankruptcy filing. *S&W Mot.*, at ¶¶ 6-7. Although the TNT Motion does not say when it served the relevant parties with notice of its lien interests, TNT did provide such information in a separate pleading it filed in the main bankruptcy case [Docket No. 239]. In a pleading titled 'Objection to Motion to Compel Release of "Trust Funds" and, Subject Thereto, Joinder in Baker Hughes Oilfield Operations, Inc. and Schlumberger Technology Corporation's Objection to Motion to Compel Release of 'Trust Funds,'' TNT states that, on October 15, 2009, "TNT served a mineral lien notice on STO Operating, South Texas Oil Company, and [ten other] non-operating working interest owners."

---

[2] With respect to this task, it is worth noting that a bankruptcy court's interpretation of its own orders is entitled to deference. *Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195, 2205 (2009) (citing, *inter alia*, *In re Nat'l Gypsum Co.*, 219 F.3d 478, 484 (5th Cir. 2000), for the proposition that "a bankruptcy court's interpretation of its own confirmation order is entitled to substantial deference."); *Stumpf v. McGee (In re O'Connor)*, 258 F.3d 392, 401 (5th Cir. 2001) (citing *Matter of Weber*, 25 F.3d 413, 416 (7th Cir. 1994), which said "'[i]n reviewing a bankruptcy court's interpretation of a confirmed plan, … the reviewing court should extend to that interpretation the same deference that is otherwise paid to a court's interpretation of its own order.'"); *Zevitz v. Zevitz (In re Zevitz)*, 2000 U.S. App. LEXIS 25283, at *4 (6th Cir., Sept. 28, 2000) (applying the deference standard to the bankruptcy court's interpretation of a stipulation entered in an adversary proceeding).

Therefore, both TNT and Smith & Wood knew, <u>prior to the bankruptcy filing</u>, of the interests they now seek to protect in this AP.

The deadline set out in the DIP Order for filing an adversary proceeding to contest the validity or priority of liens was January 29, 2010- a full three months after the date of the bankruptcy filing. Granted, the final DIP Order was not heard and approved by the court until December 2, 2009 (it was not entered until December 4, 2009), but, even assuming that the final DIP Order was the first indication that there would be a deadline for contesting the Defendants' liens, that still gave TNT and Smith & Wood almost two months to determine their course of action vis-à-vis the Defendants. However, the final DIP Order was <u>not</u> the first indication of such deadline: the Cash Collateral order, which contained similar limitations, was entered by the court on November 13, 2009 and provided the Movants with an even larger window of time to determine whether they were going to file a lawsuit contesting the Defendants' interests in this case. Therefore, it is simply not believable to this court for either TNT or Smith & Wood to contend that they did not, or, for that matter, <u>could not</u> know that their liens or claims were affected by the bankruptcy case. Moreover, none of the Movants contend that they did not receive notice of the bankruptcy or of the various relevant filings that took place in the bankruptcy (most notably for our purposes here filings that related to the Cash Collateral Order and the DIP Order). Based upon these facts (all of which are either presumed from the Movants' pleadings or are matters of which this court can take judicial notice as they are pleadings on the docket of this case), the court believes that both TNT and Smith & Wood had sufficient time to determine whether to assert their rights against the Defendants, especially in light of the fact that (i) all Movants asserted their liens and claims <u>prior</u> to the bankruptcy filing, (ii) a limitation on parties' rights to assert claims against the Defendants is contained in both the Cash Collateral

12

Order and the DIP Order, and (iii) TNT, Smith, and Wood received notice of the bankruptcy, the cash collateral hearings and the post-petition financing hearings.

The second timeliness factor, prejudice to the existing parties resulting from the intervenor's failure to intervene sooner, is also in favor of the Agent. Due to paragraph 17(g) of the DIP Order, the Motions to Intervene are untimely because they are prejudicial to the existing parties to the AP, particularly the Defendants. Specifically, the terms of the DIP Order required a party to challenge, "only by filing an adversary proceeding or motion as appropriate…," *DIP Order,* ¶ 17(g) (emphasis added), the Defendants' interests by January 29, 2010. If a party did not assert its rights against by January 29, 2010 "the Agent, the Prepetition Lenders, the Prepetition Indebtedness, the Prepetition Loan Documents, and the Prepetition Liens (all as defined in the Cash Collateral Order) shall not be subject to any other or further claims, counterclaims, causes of action, lawsuits, or challenges by any party-in-interest or any successor thereto." *DIP Order*, ¶ 17(g) at 17-18 (emphasis added). The language of ¶ 17(g) specifically included not only the filing of an adversary proceeding but also the filing of a motion, if appropriate, to challenge the Defendants' position vis-à-vis the Movants. Here, TNT and Smith & Wood simply missed the January 29, 2010 deadline by failing to file either an adversary proceeding or a motion to intervene in the AP by that date. The Agent is entitled to rely on the terms of the Cash Collateral Order and, more importantly, the DIP Order. The DIP Order was a negotiated document that drew a number of objections in advance of the hearing [Docket Nos. 89, 90, 92, 93, and 95], and the protections contained in ¶¶ 17 were bargained for by the lenders as required terms before they would agree to extend post-petition financing. *See Cobalt Ventures, LLC v. Bank of America (In re Brooks Sand & Gravel, LLC)*, 361 B.R. 477, 479 (Bankr. W.D.Ky. 2007); *see Jones v. Caddo Parish School Bd.*, 735 F.2d 925, 935 (5th Cir. 1984) (finding that the school board would be prejudiced if the intervenor's motion was granted

because the school board and the existing plaintiffs had, over the course of a year, finally negotiated a settlement agreement; to force the parties to begin at square one and to re-negotiate was prejudicial). Thus, the Motions to Intervene are untimely by the plain language of the DIP Order;[3] if this court granted the Motions to Intervene despite the clear language of the DIP Order, the court believes that the effect of such a ruling would be not only to prejudice the Agent in this case but, on a broader level, to discourage lenders from making much-needed post-petition loans for fear that the terms of debtor-in-possession financing orders could and would be set aside at the whim of the court. *See In re Brooks Sand & Gravel, LLC)*, 361 B.R. at 479.

The third factor, whether the intervenors are prejudiced, is clearly in favor of granting the Motions to Intervene. The court recognizes that, in denying the Motions to Intervene, both TNT and Smith & Wood are prejudiced in that they are unable to assert their rights vis-à-vis the Defendants. However, the court is not moved by this fact because neither TNT nor Smith nor Wood took action in defense of their rights within the limitations deadline of the DIP Order. Instead, they waited until well after the January 29, 2010 deadline to file these Motions to Intervene. In other words, any prejudice that the movants suffer if their Motions to Intervene are denied is of their own making. *See Effjohn Intl Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 561-562 (5th Cir. 2003) (noting that the intervenor – Effjohn – was neither new to the litigation in which it failed to timely intervene nor was it an unsophisticated party. "In short, the prejudice to Effjohn was of its own making.").

Lastly, the fourth factor, the existence (or lack thereof, in this case) of unusual circumstances, favors the Agent. The court does not believe that a limitations period in a debtor-in-possession financing order is an extraordinary provision in the context of moderately complex

---

[3] As an aside, the court notes that *despite* paragraph 18 of the DIP Order, which arguably allowed the Plaintiffs to file the AP at some point after January 29, 2010, the Plaintiffs managed to meet the January 29, 2010 deadline. Unlike the Plaintiffs, neither TNT nor Smith & Wood bargained for any kind of extension of the deadline in the DIP Order, they are therefore too late to assert their rights in this AP.

chapter 11 bankruptcy cases. Moreover, neither TNT nor Smith & Wood have articulated any reason why, despite their knowledge that the bankruptcy case may affect their interests, they were unable to file either their Motions to Intervene or their own separate complaint prior to or on the January 29, 2010 deadline. *See Stallworth*, 558 F.2d at 266. For all these reasons, the court finds that the Motions to Intervene are untimely, and, therefore are denied.

Additionally, the court believes that the Agent's citation to *United States v. Randall & Blake*, 817 F.2d 1188, 1192 (5th Cir. 1987) is relevant here, and, moreover, defeats the Movants' arguments that, by merely intervening in (as opposed to filing) this AP, they did not need to comply with the January 29, 2010 deadline. In *Randall & Blake*, the Fifth Circuit had before it the following facts. In 1979, the Army Corp of Engineers hired Randall & Blake, Inc. to build recreational facilities in Texas. *Id.* at 1190. Randall & Blake duly secured a payment bond from States Fidelity & Guaranty Company ("USFG"), and also hired Austin Paving Company as a subcontractor for the project. *Id.* Austin Paving, in turn, hired Greer Construction Company to supply asphalt. *Id.* Over the course of a few months in mid-1980, Greer supplied more than 6,000 tons of asphalt and was paid for most but not all of it, leaving Greer with two unpaid invoices in the amount of more than $60,000. *Id.* In December 1980, Austin Paving sued Randall & Blake and USFG under the Miller Act, 40 U.S.C. §§ 270a-270d, which "provides protection for subcontractors and their suppliers engaged in federal construction projects." *Id.* at 1189. The Miller Act has a statute of limitations of one year from the last day on which the claimant supplied labor or materials for the project. *Id.* at 1190. In May 1980, Greer filed a motion to intervene in the lawsuit. *Id.* Although Greer's motion was within the Miller Act's statute of limitations, it was not granted until July 1982, <u>after</u> the statute of limitations had run. *Id.*

Two years later, in 1984, the court allowed Greer to file an amended complaint that more particularly set forth its claims under the Miller Act. *Id.* The defendants asked the court to

15

reconsider its decision allowing Greer to file an amended complaint, asserting that, at that procedural juncture, it was too late to assert claims under the Miller Act due to the statute of limitations. *Id.* The court denied the motion to reconsider. On appeal, one of the appellants' arguments was that even assuming Greer's amended complaint related back to the original (filed in 1982), the original was also filed outside of the Miller Act's statute of limitations. *Id.* at 1192. In denying the appellants' argument on this point, the Fifth Circuit held that Greer "timely commenced its Miller Act claim," *Id.*, since it was "the filing of the motion for intervention, and not the later approval of the motion and actual filing of the complaint, determines the commencement of the action for purposes of the statute of limitations." *Id.*

In the face of the Fifth Circuit's holding in *Randall & Blake*, TNT cites to *Webber v. Mobile Oil Corp.*, 506 F.3d 1311 (10th Cir. 2007) for the proposition that "an intervening plaintiff asserting identical causes of action against the same defendants as named in the original complaint does not change the commencement date." *TNT Mot.*, at 2. In *Webber*, the defendants tried to remove a putative class action suit, originally filed in 2001 in Oklahoma state court, to the Oklahoma federal court. *Id.* at 1312. The basis for removal was the Class Action Fairness Act ("CAFA"), which was enacted on February 18, 2005, and applies to cases commenced on or after that date. *Id.* at 1312-1314. The federal court remanded the case to state court and the defendants appealed to the Tenth Circuit, which ultimately held that it lacked jurisdiction to hear the petition for review. *Id.*

In attempting to remove the case, the *Webber* defendants argued that, because certain plaintiffs were allowed to intervene in September 2005 (after CAFA became law), the state court class action came within the purview of CAFA and, therefore, the federal court had jurisdiction over the case. *Id.* at 1312-1313. The issue was thus whether, in light of the intervenors, "this case 'commenced' on or after the effective date of CAFA such that we [the Tenth Circuit] may assert

16

jurisdiction over this case…" *Id.* at 1313. The court said that the class action had commenced long before CAFA, and the fact that the intervenors appeared in the class action after CAFA was of no moment. *Id.* at 1314. The court specifically distinguished the case before it from cases – specifically including the Fifth Circuit in *Randall & Blake* – in which courts had to determine whether an intervention commenced a new case for purposes of a statute of limitations. *Id.* at 1315. The Tenth Circuit said it thusly:

> In our view, even if an intervening plaintiff always commences a new action for purposes of the statute of limitations – an issue we do not decide here – we see no reason why such a rule leads inevitably to the conclusion that an intervening plaintiff commences a new action for purposes of a newly enacted statute extending federal subject matter jurisdiction such as CAFA.

*Id.* at 1315. The rationale – specifically, that "an intervening plaintiff should not be permitted to 'piggyback' on the claims of an earlier plaintiff in order to escape the statutory bar [that] would normally shield the defendant as to the intervenor[,]" *Id.* at 1315 – of those courts holding that an intervention should not be allowed in the face of an expired statute of limitations had no place in this case because the defendants were not being subject to new liabilities via the intervening plaintiffs since the new plaintiffs all fell within the original class definition. *Id.* For all these reasons, the Tenth Circuit held that the intervening plaintiffs in *Webber* did not change the 'commencement' date of the lawsuit and, therefore, federal courts lacked the jurisdictional reach afforded to them under CAFA to hear the lawsuit. *Id.* at 1316. For all these reasons, the court denies the Motions to Intervene.

Clearly, *Webber* does not help the Movants' position in this case. *Webber* itself specifically distinguished itself from *Randall & Blake* on the basis that, in *Webber*, the court had to decide whether an intervention 'commenced' a case for purposes of a jurisdictional statute, rather than for purposes of a statute of limitations. Here, we are clearly dealing with a limitations period as opposed to a jurisdictional argument. Moreover, even if *Webber* was applicable to the

17

facts in this case, *Webber* is a Tenth Circuit case, not a Fifth Circuit case, and this court is bound by the holdings of the Fifth Circuit. On the other hand, *Randall & Blake*, which is on point for our purposes here, is a Fifth Circuit decision to which this court is bound. For these reasons, the court rejects the Movants' argument that, under the holding in *Webber*, the Motions to Intervene are timely because they do not 'commence' this AP.

**C. Conclusion**

For the reasons stated above, the court finds that the Motions to Intervene are untimely and are, therefore, denied.